IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK SEALS, on behalf of himself and similarly situated employees : : : : : v. : : GRATEFUL HEARTS, LLC : : | CIVIL ACTION<br><br>NO. 24-5891 |

**MEMORANDUM OPINION**

**Henry, J.**                                                                                                                      **December 15, 2025**

This case is before the Court on Plaintiffs' Unopposed Motion for Approval of the Settlement of Their FLSA Claim (the "Motion"). *See* ECF No. 24 ("Mot."). Upon consideration of the Motion, I will grant it and approve the Settlement Agreement.

**I.     BACKGROUND**

Plaintiff brought this lawsuit against Defendant on November 1, 2024, alleging violations of the FLSA and PMWA for failure to pay Plaintiff and other collective members overtime premium pay. *See* ECF No. 1. Plaintiff asserted the FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) and the PMWA claim as a class action under Federal Rule of Civil Procedure 23. *Id.* On April 1, 2025, the parties stipulated to conditionally certify the FLSA collective, and Plaintiff agreed that he would not pursue his PMWA as a class action claim, but instead as part of the collective action. *See* ECF No. 17.

Upon Court approval of the stipulation, Plaintiff's counsel mailed notice and consent forms to join the collective to over 30 individuals. *See* Mot. at 1-2; ECF No. 18. Four individuals—Trenis Jones, Shikia Brown, Darrien Polk, and Doretha Mason—opted into the collective. *See* ECF Nos. 19, 20, 23. Following discovery, the parties agreed to settle the lawsuit for $40,000.

1

The settlement amount is to be distributed as follows: (1) Jones will recover $7,875; (2) Mason will recover $8,070; (3) Polk will recover $1,771; (4) Seals will recover $5,742; and (5) Brown will recover $1,000. *See* ECF No. 24-1 (the "Agreement") at ¶ 1. Plaintiff's counsel, Winebrake & Santillo, LLC will receive $14,542 in attorney's fees and expenses, and Seals will receive a $1,000 service award. *Id.*

> The Agreement provides that upon payment, the Plaintiffs:
>
> release[] and forever discharge[] the [Defendant and any of its parents, franchisors, partners, subsidiaries, owners, officers, directors, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on Defendant's behalf] from all legal or equitable claims (including, but not limited to, claims for the reimbursement of liquidated damages, interest, penalties, attorney's fees and litigation costs and expenses) arising prior to the [date on which the Court enters an order approving the Settlement as fair and reasonable and dismissing the Action with prejudice] and either asserted in or reasonably related to the Action, including all such claims for unpaid regular or overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory. Plaintiffs further agree to refrain from instituting, prosecuting, filing, processing, or assisting, encouraging, or cooperating with the instituting, prosecuting, filing or processing of any litigation which in any way relates to or arises out of the claims asserted in the Action.

*See* Agreement at ¶ 4. It also provides that:

> Plaintiffs and Plaintiffs' Counsel will not make any statements or issue any press release to the media or press addressing the Settlement or the negotiation of this settlement and will not contact any media representatives. If contacted by media representatives, Plaintiffs and Plaintiffs' Counsel may state that the Parties amicably resolved the dispute and may direct the media representative to the public record.

*See* Agreement at ¶ 9.

## II. THE SETTLEMENT

In considering a whether to approve a proposed FLSA settlement, the Court is tasked with determining whether the settlement is a "fair and reasonable resolution of a bona fide dispute over

2

FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (internal quotations omitted).  Thus, "[i]f the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).

### A. The Settlement Concerns a Bona Fide Dispute

First, I find that the settlement concerns a bona fide dispute between the parties.  "[F]or a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).  Payment for overtime wages falls squarely within the contours of the FLSA.  *See* 29 U.S.C. § 207(a)(1); *Mako v. Anastasia Care Servs., LLC*, No. 19-cv-410, 2020 WL 919731, at *1 (E.D. Pa. Feb. 26, 2020) ("Disagreements over 'hours worked or compensation due' clearly establish a bona fide dispute."). Further, Defendant's answer denies liability, which indicates that it intended to defend against Plaintiffs' claims for overtime.  I thus hold that the settlement concerns a bona fide dispute between the parties.

### B. The Settlement is Fair and Reasonable for the Employees

Next, I consider whether the settlement is fair and reasonable for the employees.  In determining fairness and reasonableness, the Court considers the factors set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).  Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)) (cleaned up).

As an initial matter, I note that the parties are settling for 100% of their alleged damages. Indeed, discovery confirmed that the Plaintiffs were not paid overtime for the following totals: (1) Jones – $3,937.50; (2) Mason – $4,035.90; (3) Polk – $885.50; and (4) Seals – $2,871.00. Mot. at 2. The data uncovered for Plaintiff Brown during discovery did not list overtime hours. Yet, the recovery amounts as set forth in the Agreement are double the unpaid wages for Jones, Mason, Polk, and Seals, which is the maximum amount that those Plaintiffs could seek at trial.[1] *See* Mot. at 3. As for Plaintiff Brown, that payroll data is disputed. Mot. at 3. Nevertheless, the parties agreed to pay Brown $1,000, which Plaintiffs' counsel estimates would equate to the liquidated value of approximately 71 overtime hours.[2] With this context, I now analyze the *Girsh* factors.

The first factor—the complexity, expense, and likely duration of litigation—weighs in favor of approval of the Agreement. Absent settlement, the next steps in the case would likely be a motion to decertify the collective by Defendant, dispositive motions, and perhaps trial. As the Motion aptly points out, "[s]uch expenditures of time are wasteful where, as here, Plaintiffs are settling for 100% of their alleged damages." Mot. at 6.

As for the second factor, the reaction of the class to the settlement, the parties note that all five Plaintiffs agree with the settlement terms. The third factor, which looks to the stage of

---

[1] The FLSA's "liquidated damages" provision allows a plaintiff to double their unpaid overtime wages if the defendant fails to demonstrate that its violation was in good faith. *See Sec'y, United States Dep't of Lab. v. E. Penn Mfg. Co.*, 123 F.4th 643, 651 (3d Cir. 2024).

[2] The parties note that Brown would not allege she worked over 71 overtime hours during her employment with Defendant. Mot. at 4 n.2.

4

proceedings and the amount of discovery completed, also weighs in favor of approval of the Agreement because the parties engaged in discovery and completed a detailed damages analysis, so counsel had an "adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).

As to the fourth through ninth factors, the parties posit—and I agree—that these factors weigh in favor of approving the Agreement where, as mentioned above, Plaintiffs will receive 100% of their alleged damages. Mot. at 6-7. I thus hold that, in considering the *Girsh* factors, the Agreement is fair and reasonable for the employees.

### C. The Agreement Furthers the FLSA's Implementation in the Workplace

The final consideration is whether the Agreement furthers the FLSA's implementation. "Indicia of a compromise which runs counter to the FLSA's purpose of protecting workers include restrictive confidentiality clauses and overly broad release provisions." *Fritz v. Terminite, Inc.*, No. 19-cv-15749, 2020 WL 5015508, at *2 (D.N.J. Aug. 25, 2020). As noted above, the Agreement here has both a release provision and a confidentiality provision.

The release provision here does not frustrate the FLSA's purpose. "[A] release provision in an FLSA settlement agreement is only acceptable if it unambiguously covers only wage-and-hour related claims and cannot be read as a waiver of the plaintiff's right to sue on other grounds related to their employment." *Adams v. Kulicke & Soffa Indus., Inc.*, No. 24-cv-1679, 2025 WL 1479498, at *4 (E.D. Pa. May 22, 2025). The release provision in the present Agreement is sufficiently narrowly tailored such that Plaintiffs are only releasing wage and hour claims that accrued prior to the entry of this Order.

As for the confidentiality provision, I am similarly satisfied that it does not frustrate the purposes of the FLSA. Although "[t]here is a strong presumption against confidentiality clauses in FLSA wage-settlement agreements," "[d]istrict courts within the Third Circuit have

occasionally approved narrowly crafted confidentiality clauses." *Hailey v. Bell-Mark Techs., Corp.*, No. 17-cv-1775, 2019 WL 1925116, at *5-6 (M.D. Pa. Apr. 30, 2019). The confidentiality provision here is narrowly tailored in that it merely prevents Plaintiffs and their counsel from making statements to the news media. Such a provision does not frustrate the purposes of the FLSA. *See Alvarez v. BI Inc.*, No. 16-cv-2705, 2020 WL 1694294, at *9 (E.D. Pa. Apr. 6, 2020) (confidentiality clause did not frustrate the purpose of the FLSA because it only barred Plaintiffs from discussing the settlement with the media and did not bar them from discussing the lawsuit with employees of Defendant); *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 659 (E.D. Pa. 2020) ("[A] confidentiality clause limited to prohibiting discussions with the media ordinarily will not frustrate the FLSA."). Therefore, I hold that the Agreement does not impermissibly frustrate the implementation of the FLSA in the workplace.

## III.   ATTORNEY'S FEES

The Agreement provides that Plaintiffs' counsel, Winebrake & Santillo, will receive $14,542 in attorney's fees and expenses.[3] 29 U.S.C. § 216(b) provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." In FLSA cases, Courts may use either the percentage-of-recovery method or the "lodestar" formula in evaluating the reasonableness of attorney's fees. *See In re Chickie's & Pete's Wage & Hour Litig.*, No. 12-cv-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014). The percentage-of-recovery method "allows a district judge to award attorneys' fees as a percentage of the total fund recovered." *Id.* The lodestar method, on the other hand, involves "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.*

---

[3] The expenses include: (i) the $405 filing fee; (ii) $90.90 paid to a process server; and (iii) $104.94 in postage and Fed-Ex Costs. Mot at 8 n.4.

Here, both methods of calculating attorney's fees indicate that the proposed attorney's fee award is reasonable. Under the percentage-of-recovery method, the Court considers the following factors:

> (1) The size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

Here, five individuals will benefit from the settlement fund, and none of them have objected to any portion of the Agreement. Plaintiff's counsel has indicated that they are "consistently appointed to serve as class counsel in wage rights cases before this Court," further supporting an award of attorney's fees. Mot. at 9. As to the complexity of the case, as previously noted, the case would likely proceed to dispositive motions or trial absent settlement. Factor five—the risk of nonpayment—also favors approval of attorney's fees because Plaintiff's counsel was working on a contingency fee basis, so non-payment was a risk. Plaintiff's counsel worked 44.1 hours on this litigation, an amount which I find to be reasonable and which warrants an award of attorney's fees. And finally, as to awards in other FLSA cases, attorney's fees awards tend to range between 19% to 45% of the total settlement amount. *Keller v. TD Bank, N.A.*, No. 12-cv-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014). The proposed attorney's fees award here, minus expenses, constitutes 34.86% of the $40,000 settlement amount. Mot. at 10. That is within the typical range, further favoring approval of the attorney's fees award.

As for the lodestar calculation, Plaintiff's counsel's timesheets indicate that the lodestar for their work totals $31,762.50 for 41.1 hours worked. *See* ECF No. 24-3. The proposed

7

attorney's fees award is far lower than the lodestar, indicating that the requested fees are appropriate. I therefore approve the award of attorney's fees and associated expenses.

## IV.    SERVICE AWARD

The Agreement contemplates a $1,000 service award for Plaintiff Seals. "Service awards generally function to 'compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.'" *Devine v. Ne. Treatment Ctrs., Inc.*, No. 20-cv-02417, 2021 WL 4803819, at *9 (E.D. Pa. Oct. 14, 2021) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011)). The approval of service awards is within the Court's discretion. *Id.* Here, by "lending [his] name[] to the litigation," Plaintiff has "incurred the risk of adverse action against [his] current and future employers." *Kelly v. J&J Serv. Sols. LLC*, No. 23-cv-2854, 2024 WL 3889088, at *5 (E.D. Pa. Aug. 20, 2024). Further, the proposed service award constitutes a mere 2.5% of the total settlement award, which is within the general range of service awards approved by Courts in this district. *See Devine*, 2021 WL 4803819, at *10; Mot. at 11. I thus find the service award of $1,000 appropriate.

## V.    CONCLUSION

For the reasons discussed more fully above, I approve the Agreement in full. An appropriate Order follows.